IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2013 Session

## KEVIN FISHER ET AL. v. RUTHERFORD COUNTY REGIONAL PLANNING COMMISSION ET AL.

Appeal from the Chancery Court for Rutherford County
No. 10cv1443      Robert E. Corlew, III, Chancellor

No. M2012-01397-COA-R3-CV - Filed May 29, 2013

The main issue in this case is whether Rutherford County provided adequate notice, under the Open Meetings Act, concerning a planning commission meeting to vote on the site plan for a mosque. We have concluded that the trial court erred in finding the notice provided to be inadequate under the Open Meetings Act. In all other respects, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., and RICHARD H. DINKINS, JJ., joined.

Josh A. McCreary and James C. Cope, Murfreesboro, Tennessee, for the appellants, Rutherford County Regional Planning Commission et al.

David B. LaRoche, Murfreesboro, Tennessee, for the appellant, Murfreesboro Post Publishing, LLC.

Joe M. Brandon, Jr., Murfreesboro, Tennessee and J. Thomas Smith, Franklin, Tennessee, for the appellees, Kevin Fisher et al.

Douglas R. Pierce, Nashville, Tennessee for the Amicus Curiae, Public Notice Resource Center, Inc.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

This dispute centers around the proposed construction by the Islamic Center of Murfreesboro ("ICM") of a mosque in Rutherford County.[1] After purchasing a piece of property for the mosque, the ICM submitted a site plan to the Rutherford County Planning Department. The site plan included a mosque, a cemetery, a school, and a park. The site plan was scheduled to be reviewed at the regularly scheduled planning commission meeting on May 24, 2010. At the meeting on May 24, 2010, the planning commission reviewed and approved the ICM site plan.

On September 16, 2010, a group of county residents filed suit against the Rutherford County Regional Planning Commission and numerous other county entities and officials seeking remedies for alleged violations of Tennessee's Open Meetings Act, Tenn. Code Ann. § 8-44-101 *et seq.*, as well as alleged violations of the due process guarantees of the Tennessee Constitution. The plaintiffs requested a temporary restraining order to prevent the ICM from taking any further steps to advance approval of the mosque site during the pendency of the action and a declaration that the May 24, 2010 site approval was void due to inadequate public notice. The plaintiffs subsequently filed amended pleadings including additional allegations and claims; these pleadings will be discussed only as pertinent to the issues raised on appeal. Residents of the neighborhood near the proposed mosque site were added as additional plaintiffs.

The trial court held a hearing on the plaintiffs' motion for temporary injunctive relief beginning on September 27, 2010 and continuing on various other days through November 17, 2010. The court entered an order on November 23, 2010 denying the motion for injunctive relief. The court also entered extensive findings of fact and conclusions of law.

The defendants filed a motion to dismiss for lack of standing all claims not under the Open Meetings Act. The court found that, with respect to those claims not grounded in the Open Meetings Act, the plaintiffs had not alleged any injury different from that suffered by other county citizens. Because the plaintiffs lacked standing, the trial court granted the defendants' motion to dismiss all actions save those regarding the Open Meetings Act.

In October 2011, Murfreesboro Post Publishing, LLC ("MPP") filed a motion to intervene as a plaintiff in order to assert a claim for a declaratory judgment that the MURFREESBORO POST was an appropriate and legal location for the publication of notices in a newspaper or newspaper of general circulation in Rutherford County. The court allowed MPP to intervene.

---

[1]This litigation has included many twists and turns and volumes of filings, but this opinion discusses only what relates to the narrow issues on appeal.

The matter was tried over two days in April 2012. On June 1, 2012, the trial court entered an order finding that, in light of "the significance of the matters decided and the overall general interest of the community as a whole," and evidence that "interested public officials did not know of the issue," the notice given for the May 24, 2010 regional planning commission meeting did not comply with the Open Meetings Act and that, therefore, the decision of the regional planning commission regarding the ICM site plan at that meeting was void ab initio. The court enjoined the defendants from holding further meetings without adequate public notice. The court declined to grant MPP's request for a declaratory judgment on the ground that there was no actual controversy to be resolved and dismissed the declaratory judgment action.

The defendants and the intervening plaintiff, the MPP, appealed. Rutherford County filed a motion to stay the trial court's June 1, 2012 order pending appeal, but the trial court denied the motion to stay.

On July 18, 2012, the federal government filed suit against Rutherford County in federal district court alleging that the June 1, 2012 order violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq. See United States v. Rutherford Cnty., Tenn.*, No. 3:12-0737, 2012 WL 2930076 (M.D. Tenn. July 18, 2012). The federal court issued a restraining order requiring the county to process the ICM construction in a typical fashion, including completing final inspections and issuing a certificate of occupancy. *Id.* at *2. The trial court thereafter entered an order staying all of its orders indefinitely to the extent they were at variance with the federal district court's orders. As a result, the mosque was completed and is now in use.

*Issues on appeal*

The issues raised by the defendants may be summarized as follows: (1) whether the trial court erred in holding that the notice provided by the planning commission violated the Open Meetings Act; and (2) whether the trial court's order violates RLUIPA or the Tennessee Religious Freedom Act, Tenn. Code Ann. § 4-1-407. The intervening plaintiff, MPP, argues that the trial court erred in denying its prayer for a declaratory judgment. The plaintiffs have raised additional issues on appeal: (1) whether the trial court correctly concluded that RLUIPA and the Tennessee Religious Freedom Act did not affect the legality of the site approval process; (2) whether the trial court erred in determining that the plaintiffs lacked standing to bring an action under the Declaratory Judgment Act challenging the constitutionality of the site approval process under the Tennessee Constitution; and (3) whether the trial court erred in disallowing the testimony of John Guandolo and Stephen Coughlin.

ANALYSIS

## (1) Mootness

We first consider an issue not raised by the parties—whether this appeal is moot. A moot case is not justiciable "because it no longer involves a present, ongoing controversy." *Alliance for Native Am. Indian Rights in Tenn. v. Nicely*, 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005). A case is moot if it "no longer serves as a means to provide some sort of relief." *Id.* This court has previously held that "a suit brought to enjoin a particular act becomes moot once the act sought to be enjoined takes place." *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994); *see also Gossett Motor Cars, LLC v. Hyundai Motor Am. Inc.*, No. M2011-01769-COA -R3-CV, 2012 WL 3144640, at *2 (Tenn. Ct. App. Aug. 2, 2012) (perm. app. denied Dec. 11, 2012). Because the ICM mosque is built and operating, the principal judicial relief sought by the plaintiffs—to stop the construction of the mosque—is no longer available.

There are, however, exceptions to the mootness doctrine for "(1) issues of great public interest and importance to the administration of justice, and (2) issues capable of repetition yet evading review." *McIntyre*, 884 at 137 (citations omitted). A court may, in its discretion, decide to consider a case that falls into one of the exceptions to the mootness doctrine. *Id.* We have determined that the issues with respect to the application of the Open Meetings Act fall within the exception for issues of great public interest. We decline, however, to reach the constitutional issues raised. Under Tennessee law, a court is not to decide constitutional issues "unless resolution is absolutely necessary for determination of the case and the rights of the parties." *Owens v. State,* 908 S.W.2d 923, 926 (Tenn.1995). Important constitutional issues "should be left for determination in a case that presents an actual, ongoing controversy." *Nicely*, 182 S.W.3d at 341.

## (2) Notice

The central issue presented on appeal is whether the notice provided by the county for the planning commission meeting complied with the Open Meetings Act ("OMA"), Tenn. Code Ann. §§ 8-44-101–8-44-111.

Most of the relevant facts are undisputed. The property at issue here is located in an area zoned for residential use. The Rutherford County Zoning Resolution provides for certain "uses-by-right" within residential districts; and these uses-by-right include "religious meeting places." Rutherford County Zoning Resolution § 1.04(E). A property owner is not required to seek rezoning in order to use property for a use-by-right. Thus, the ICM had the right to build a religious meeting place on its property without obtaining any zoning variance.

-4-

Under the zoning ordinance, the ICM was still required to submit a site plan to the planning commission. Zoning Resolution article V. Site plans are reviewed only by the planning commission. Zoning Resolution § 5.06. If a site plan complies with the zoning ordinance, subdivision regulations, and any other applicable conditions, the planning commission shall approve the plan. Zoning Resolution § 5.05. The planning commission may, however, "require that the developer provide additional buffering, increase set-backs, arrange structures or meet other requests in order to mitigate any adverse impact that might affect the adjacent homes." *Id.* The county engineer may also require retention/detention facilities, adherence to access requirements, or street improvements. *Id.*

The planning commission customarily held two meetings a month: a morning meeting for matters for which a public hearing was not required, and an evening meeting for decisions requiring a public hearing. Notice of these meetings was published in the MURFREESBORO POST. Because the ICM site plan did not require a public hearing, it was scheduled to be reviewed at the regularly scheduled morning planning commission meeting on May 24, 2010. The planning department ran a meeting notice in the MURFREESBORO POST and on the MURFREESBORO POST website. The meeting notice, which was published on May 2, 2010, read as follows:

> The Rutherford County Regional Planning Commission announces the following meetings:
> •       May 10, 2010 at 6:00 PM in the Historic County Courthouse located in the Public Square, Murfreesboro, TN.
> •       May 24, 2010 at 9:00 AM in the Planning Department Mezzanine Meeting Room located at 1 South Public Square, Murfreesboro, TN
> All interested parties are invited to attend.

The notice and meeting agenda were available in the planning department office prior to the meeting.

The trial court determined that the notice provided by the county did not comply with the OMA. The following statements from the trial court's memorandum opinion elucidate its reasoning:

> •       Given the significance of the matters decided and the overall general interest of the community as a whole, as well as the overwhelming proof that even interested public officials did not know of the issue, we cannot find that the public notice to the community was adequate when we consider the opportunities which the county had to notify the citizens.

- [W]e find that the county had the obligation under the totality of the circumstances to provide better notice of the occurrence of the meeting and the fact that this matter was to have been considered.
- [T]he Court is compelled to find that a small routine advertisement in the legal section, surrounded by advertisements published by the city of Murfreesboro, near the beginning of the month simply stating meeting scheduled for the month, but schedules subject to change, is not sufficient, given the other proof surrounding the availability of that publication at the time to the citizens of the county generally.
- [W]hen a major issue of importance to all citizens is being discussed at a specially called meeting, the greatest notice available may be required. Here, we note that the meeting at issue was a regularly scheduled meeting, but a meeting where an issue of major importance to citizens was being discussed. Thus, some reasonable means of notice, not only of the meeting, but also of the particular issue before the body, was reasonably required.

What type of notice does the Open Meetings Act require for a regular meeting? The act states:

> (a) Notice of Regular Meetings. Any such governmental body which holds a meeting previously scheduled by statute, ordinance, or resolution shall give adequate public notice of such meeting.
> (b) Notice of Special Meetings. Any such governmental body which holds a meeting not previously scheduled by statute, ordinance, or resolution, or for which notice is not already provided by law, shall give adequate public notice of such meeting.

Tenn. Code Ann. § 8-44-103. The statute offers no further guidance as to what constitutes "adequate public notice" in the context of a regular meeting.

Statutes should be interpreted in accordance with the intent of the legislature, and that intent is primarily derived from the natural and ordinary meaning of the words used. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). Tennessee Code Annotated section 8-44-103 contains different subsections for notice of regular meetings and notice of special meetings. Both subsections require "adequate public notice of such meeting." The notice is "of such meeting," not necessarily of the items to be discussed at "such meeting." By separating the notice requirement into regular and special meetings, the legislature has impliedly stated that "adequate public notice of such meeting" may be different depending on whether the meeting was regularly scheduled or specially set.

-6-

In *Memphis Publishing Company v. City of Memphis*, 513 S.W.2d 511 (Tenn. 1974), our Supreme Court adopted the following test for determining what constitutes adequate public notice: "[A]dequate public notice means adequate public notice under the circumstances, or such notice based on the totality of the circumstances as would fairly inform the public." *Memphis Pub'g*, at 513. Most of the subsequent cases have involved specially called meetings. *See Englewood Citizens For Alternate B v. Town of Englewood*, No. 03A01-9803-CH-00098, 1999 WL 419710, at *2 n.1 (Tenn. Ct. App. June 24, 1999) (announcing three-prong test for assessing sufficiency of notice, but applicable only to special meetings); *Kinser v. Town of Oliver Springs*, 880 S.W.2d 681 (Tenn. Ct. App. 1994); *Neese v. Paris Special Sch. Dist.*, 813 S.W.2d 432, 435 (Tenn. Ct. App. 1990).

In *Souder v. Health Partners, Inc.*, 997 S.W.2d 140 (Tenn. Ct. App. 1998), a physician filed suit against a preferred provider organization (PPO) claiming that the PPO (part of a county general hospital district) violated the OMA in its termination of a physician participation agreement. While initial meetings were made without notice, the hospital claimed that any violations were cured by subsequent ratification by the district's board of trustees. *Souder*, 997 S.W.2d at 149. It is not clear from the opinion whether the meeting of the district's board of trustees at issue was a regular meeting or a special meeting. The following notice of the board of trustees meetings was provided to the local newspaper, local radio stations, and local TV station eight days prior to the meeting: "The board of trustees of West Tennessee Healthcare will meet in the city-county conference of Jackson-Madison County General Hospital at 5:00 p.m. on Tuesday." *Id.* at 150. The plaintiff argued that the notice was inadequate because there was no mention of the meeting content or issues to be discussed. In finding the notice to be adequate, the court reasoned as follows:

> In view of the totality of the circumstances, the notice of the meeting comports with the provisions of the Act. Notice was given to the media in order to notify the public of the meeting. The notice provided the public with a reasonable opportunity to be present at the meeting. In fact, according to the minutes of the meeting, members of the media and the public were in attendance at the meeting. Furthermore, while Souder protests the contents of the notice in not referring to the proposed action of limiting the physician network, the meeting was not limited to this sole subject. The agenda of the meeting presented several different areas regarding the business of the District. Thus, failing to specifically state in the notice the issue concerning HP did not make the notice inadequate in light of the several purposes of the meeting. We are of the opinion that notice was given which "would fairly inform the public" under the circumstances.

*Id.*

*Lewis v. Cleveland Municipal Airport Authority*, 289 S.W.3d 808 (Tenn. Ct. App. 2009), involved the rezoning of property to allow for the relocation of the local airport. Among the many arguments raised was the assertion that the county commission acted in violation of the OMA at its work session on August 14, 2006. *Lewis*, 289 S.W.3d at 824. There were regularly scheduled work sessions on the second and fourth Monday of each month, and they were open to the public. *Id.* The plaintiffs argued that the county violated the OMA because no agenda was published in the newspaper. The court determined that the trial court had not erred in granting the defendants' motion for summary judgment regarding violation of the OMA. *Id.*

Under the "totality of the circumstances" in the present case, was the notice provided by the county sufficient to "fairly inform the public"? *Memphis Pub'g*, at 513. In light of the available precedents and the language of the OMA itself, we conclude that the notice in this case was adequate. Tennessee Code Annotated section 8-44-103 requires notice of the meeting itself and does not speak to notice of the content of the meeting.[2] Cases requiring notice of items to be discussed at a meeting have all involved special meetings. We decline to adopt the trial court's reasoning that issues of public importance require notice of meeting content, even for regular meetings. Such requirements have been imposed only with regard to special meetings.[3] *See Englewood*, 1999 WL 419710, at \*3; *Neese*, 813 S.W.2d at 435. In this case, the county provided notice of its regular meeting in the same manner used with respect to all other site plans. At that meeting, the planning commission considered a number of agenda items and voted on multiple issues.

In addition to finding the notice deficient for failing to alert citizens of the proposed discussion of the ICM site plan, the trial court found that publication in the MURFREESBORO POST did not constitute adequate public notice. We will set forth the trial court's factual summary concerning this newspaper:

> The evidence showed that the advertisement in the MURFREESBORO POST was in relatively small type near the bottom of a page which contained a number of advertisements and legal notices, most of which were provided by the City of Murfreesboro. The evidence showed that the MURFREESBORO POST had

[2]We note that the legislature could have defined "adequate public notice," but did not and has not since the statute was enacted in 1974. Had the legislature intended to require notice of the agenda for every meeting, whether regular or special, it could easily have said so at any time during the last 39 years. Other states have. *See, e.g.,* Ariz. Rev. Stat. Ann. § 38.431.02(G); Colo. Rev. Stat. Ann. § 24-6-402(c).

[3]A requirement of notice of the agenda of special meetings makes sense because one can assume items requiring a special meeting are of particular importance and, therefore, deserving of more extensive notice.

virtually no paid circulation at the time of the advertisement, but that some 13,000 newspapers are placed in the driveways within the city limits of Murfreesboro, without cost to the residents who live in homes served by the driveways. Further, some 8,000 newspapers were placed in racks at some 300 locations within the cities of Murfreesboro, Smyrna, Lavergne, and Eagleville, and the unincorporated areas of the county. The proof showed that no papers were placed in driveways in any area other than portions of the incorporated city of Murfreesboro, and no papers were delivered to the area of the county where the proposed structure was located. The proof showed that only some 196 papers were placed in racks in unincorporated areas of the county, despite the fact that approximately one-third of the county's citizens live in such areas. Although there was testimony that the MURFREESBORO POST had circulated in all zip codes of the county at the time, evidence of a certified analysis of the circulation of the paper failed to demonstrate that there was any circulation in the 37149 zip code which is the Readyville Community or the 37118 zip code which is the Milton Community, both of which exist in Rutherford County. Further there was no evidence that the paper circulated in the Fosterville, which post office existed at the time, nor in the Nolensville zip code or the Mount Juliet zip code, a part of which routes are in Rutherford County. The proof did show that some papers were distributed in the 37128 zip code where the development was requested. Both the Defendants and the Intervening party suggest to us that the circulation of the POST, which then published only on Sundays, was, at the time, larger than the circulation of the DAILY NEWS JOURNAL, a subscription newspaper which also circulated in Rutherford County at the time. The NEWS JOURNAL was not at issue however, and there was no proof as to the manner of circulation of that paper, other than the fact that it was circulated to those who paid to receive it and the POST was placed in driveways within the city of Murfreesboro and otherwise placed in racks to be picked up by anyone who wished to have one or more copies.

The evidence shows that the county operates a cable television station, but there was no showing that there was any publication of notice on this cable television station. The county also operates a website on the internet. Although the evidence showed that the Defendants purported to advertise its public meetings on the internet, the evidence showed that through an oversight, there was no advertisement of this meeting on the internet. Further, the proof showed that generally the county posted agendas for meetings on the website, but no agenda was published for this meeting until after the meeting occurred.

What type of publication is required for adequate public notice of a regular planning

commission meeting? This depends on the "totality of the circumstances." *Memphis Pub'g*, at 513. In some previous OMA cases, posting a notice at certain locations, without publication in a newspaper, was found to provide adequate public notice. *Englewood*, 1999 WL 419710, at *3; *Kinser*, 880 S.W.2d at 682. While we know of no OMA cases addressing the adequacy of publication in a certain newspaper, the case of *Cook v. McCullough*, No. 89-245-II, 1989 WL 155926 (Tenn. Ct. App. Dec. 29, 1989), offers some general guidance. The issue in *Cook* was whether a notice in the NASHVILLE RECORD constituted "publication in a newspaper" as required by the statutes on tax sales. *Cook*, 1989 WL 155926, at *7. In concluding that the NASHVILLE RECORD qualified as a newspaper, the court identified the following criteria: (1) It is published at regular intervals (such as daily or weekly); (2) it is "intended for circulation among the general public"; (3) it "contains matters of general interest"; and (4) it is "in the form of a newspaper."[4] *Id.* at *8.

In reaching the conclusion that publication in the MURFREESBORO POST was insufficient, the trial court cited evidence "that few opportunities existed for those who lived near the proposed site to receive a copy of the MURFREESBORO POST because there was no home delivery in the area, and the nearest free distribution rack was some three miles away." The evidence also showed, however, that the newspaper was published weekly, was intended for circulation to the general public, and contained matters of general interest. Over 21,000 copies were distributed throughout the county on Sundays in May 2010. This was the customary location for the county planning commission's notices, and any interested person could obtain a copy at a distribution rack or on the newspaper's website.[5] We conclude that the county's publication of the notice in the MURFREESBORO POST was sufficient under the OMA.

*RLUIPA issues*

Both the county and the plaintiffs raise issues with respect to RLUIPA and the Tennessee Religious Freedom Act related to the OMA notice issue. The federal act and the

---

[4]Relying upon these factors, the Tennessee Attorney General previously opined that the MURFREESBORO POST was a newspaper of general circulation for purposes of publishing official notices. Op. Tenn. Atty. Gen. 07-62 (May 7, 2007). The opinion cites a circulation for the newspaper of approximately 45,000 homes and pickup locations. Ronald Fryar, current publisher of the MURFREESBORO POST, testified in the present case and estimated the paper's circulation in May 2010 to be approximately 21,000. This discrepancy, while relevant, is, in our view, not determinative of the OMA issue because the OMA establishes no criteria for newspaper publication.

[5]The proof showed that the county had recently started advertising public meetings on its website but had failed to do so in the case of the meeting at issue. Such efforts to increase the dissemination of information do not mean that the county was required to do so under the OMA.

state act generally prohibit discriminating against religious groups in land use decisions.

The county argues that the trial court's order invalidating the notice used violated RLUIPA or the Tennessee Religious Freedom Act. In light of our determination that the notice provided was adequate, we need not address the county's argument. We note, however, that this was an issue before the federal district court and not an issue that was considered by the trial court.

Moreover, in light of our conclusion that the notice provided by the county was adequate under the OMA, we need not address the plaintiffs' arguments with respect to the trial court's order and RLUIPA.

*Expert witnesses*

The plaintiffs argue on appeal that the trial court erred in excluding the testimony of two experts they planned to call as witnesses at the trial in April 2012. The two witnesses at issue are John Guandolo, a former FBI agent, and Stephen Coughlin, a former Pentagon advisor. The plaintiffs assert that the testimony of these two witnesses on "the Sharia-Jihad risks of the ICM" was relevant to the issue of what constituted adequate notice under the OMA.

A trial court's decisions regarding the admission or exclusion of evidence are reviewed under an abuse of discretion standard. *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273 (Tenn. 2005); *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). So, "we are not permitted to substitute our judgment for that of the trial court." *Id.*

Rule 702 of the Tennessee Rules of Evidence provides: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify in the form of an opinion or otherwise." Pursuant to Tenn. R. Evid. 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

We find no abuse of discretion in the trial court's decision to grant a motion in limine to exclude the testimony of these two experts. The matters about which these experts offered expertise—the supposed threat presented by the ICM due to alleged connections with radical Islam—were not relevant to the determination before the court as to the notice required under

the OMA for the meeting to approve or disapprove the ICM's site plan. As discussed above, the notice required was the same as that required for any other site plan.

### (3) Declaratory judgment

The intervening plaintiff, Murfreesboro Post Publishing, LLC ("MPP"), argues on appeal that the trial court erred in denying its prayer for a declaratory judgment. The publishing company sought a declaration that the MURFREESBORO POST was a newspaper of general circulation for publication of official notices.

A court's decision on whether to issue a declaratory judgment is a matter within the court's discretion, and this discretion has been described by our Supreme Court as "very wide." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000); *S. Fire & Cas. Co. v. Cooper,* 292 S.W.2d 177, 178 (Tenn. 1956).

The publishing company was permitted to intervene in this case after the trial court, in its order of November 17, 2010 denying injunctive relief to the plaintiffs, expressed doubt as to whether publication of a notice in the MURFREESBORO POST was sufficient under the OMA and as to whether the POST qualified as a newspaper of general circulation within Rutherford County. At the final hearing in April 2012, MPP presented evidence on these issues. In its final order, the trial court declined to issue a declaratory judgment and provided the following reasoning:

> The general rule [with respect to declaratory judgments] is that a Court should decline the opportunity to render a declaratory judgment when such judgment would not terminate a controversy or uncertainty giving rise to a proceeding. Here, as stated above, the law did not require publication of the meeting at issue in a newspaper of general circulation. While the issue may be one of interest, it is not an issue in controversy and thus is not proper for our determination.

We find no abuse of discretion in the trial court's decision not to enter a declaratory judgment concerning a matter not necessary to the resolution of the case.

CONCLUSION

For the foregoing reasons, we reverse in part and affirm in part the judgment of the trial court.  Costs of appeal are assessed one-third against the county appellants, one-third against the MPP, and one-third against the appellees, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE